UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2016 MAR 14  PH 4: 48

CLERK

BY_____
DEPUTY CLERK

UNITED STATES OF AMERICA )
)
v. ) Case Nos. 2:15-cr-12, 2:15-cr-23
)
JOSEPH LEE DARLING )

### OPINION AND ORDER DENYING DEFENDANT'S MOTIONS FOR RECONSIDERATION
(Docs. 17 & 52)

Pending before the court are Defendant Joseph Lee Darling's motions for reconsideration of the court's denial of his motions to file a late notice of appeal. (Docs. 17 & 52.) Defendant contends that the court should grant his motions for reconsideration because the court "lacked jurisdiction to revoke his term of supervised release and impose a prison term as a result of the violation [of his conditions of supervised release]." *Id.* at 2-3. The government opposes the motions.

The government is represented by Assistant United States Attorney Wendy L. Fuller. Defendant is represented by Federal Public Defender Michael L. Desautels.

**I.     Factual and Procedural History.**

The court assumes the parties' familiarity with the underlying facts and procedural history, and therefore briefly recounts only those facts which are pertinent to Defendant's pending motions. On July 1, 2010, Defendant commenced a five year term of supervised release. On January 20, 2015, while on supervised release, Defendant was charged with distributing Oxycodone and detained. Defendant was subsequently indicted, and on June 9, 2015, Defendant pled guilty to conspiring to distribute Oxycodone. On September 25, 2015, based on his pending drug charge, a petition on probation and supervised release was filed. On October 1, 2015, Defendant was sentenced to a mandatory minimum term of 120 months imprisonment based on his guilty plea to one count of conspiring to distribute Oxycodone.

On October 1, 2015, Defendant waived his preliminary hearing, asked the court to proceed with his supervised release violation as part of his sentencing, and admitted to the supervised release violation:

> **Defense counsel:** Your Honor, just procedurally, [Defendant] is going to, when the [c]ourt brings this up, admit the violation and resolve his supervised release case today [so that] it . . . [is] okay to then speak about the sentencing on that[.] . . .

(Docs. 11 & 48 at 21-22.)  Defendant did not raise any jurisdictional issues at this time.

Defendant's Guideline range for his supervised release violation was 33 to 36 months.  Defense counsel argued for a term of "not . . . more than a year and a day and hopefully less than that, such as six or seven months." *Id.* at 24.  Consistent with the Sentencing Guidelines, which provide that any term of incarceration for a supervised release violation be imposed consecutively, the court sentenced Defendant to a term of thirteen months imprisonment for his supervised release violation, to run consecutively to his term of 120 months imprisonment for conspiring to distribute Oxycodone.

On October 30, 2015, Defendant placed into the internal prison mail system correspondence to defense counsel, including motions to proceed *in forma pauperis* and for appointment of counsel, and a notice of appeal.  (Docs. 17-1 & 52-1.)  On November 6, 2015 at 5:27 p.m., defense counsel's office received this correspondence and first read it on November 9, 2015.  Defense counsel concedes that he "wait[ed] until November 16, 2015, [the thirtieth day after the court entered judgment,] to file the motion [requesting permission to file a late notice of appeal] because it was not until that date that counsel was able to speak to [Defendant] and confirm that he did, in fact, wish to seek approval to file a late [notice of] appeal."  (Docs. 17 & 52 at 5.)

## II.    Conclusions of Law and Analysis.

Defendant argues that he has a "strong argument" that the court lacked jurisdiction to revoke his supervised release because his term of supervised release expired on July 1, 2015, three months prior to the date on which the court convicted and sentenced him for that violation.  (Docs. 17 & 52 at 1.)  Defendant contends that pretrial detention does not

2

toll a term of supervised release, and the government did not file a warrant or summons before the expiration of his term.[1]

The government opposes the motions for reconsideration, arguing that Defendant has not identified sufficient grounds for reconsideration because the court had jurisdiction to revoke his term of supervised release, which was tolled as of January 20, 2015 based on his pretrial detention. If the court grants Defendant's motions to reconsider, the government contends that Defendant has not demonstrated good cause or excusable neglect for failing to file his appeal within fourteen days after the court's entry of judgment.

## A.     Whether Pretrial Detention Satisfies 18 U.S.C. § 3624(e)'s Tolling Requirement that a Defendant be Imprisoned "in Connection with a Conviction[.]"

Pursuant to 18 U.S.C. § 3624(e), "[a] term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than [thirty] consecutive days." The Second Circuit has not determined whether pretrial detention tolls the expiration of a term of supervised release. *See United States v. Summers*, 2000 WL 1550166, at \*2 (2d Cir. Oct. 18, 2000) (declining to consider application of § 3624(e)).[2] The court must therefore determine whether pretrial detention tolls a term of supervised release pursuant to § 3624(e).

---

[1] Defendant cites 18 U.S.C. § 3583(i), which states a district court's authority to revoke a term of supervised release extends for a reasonable time beyond the expiration of the supervised release term if, prior to expiration of the supervised release term, a warrant or summons is issued based upon an allegation that a condition of supervised release has been violated. The parties do not dispute that neither a warrant nor summons was issued in this case. By the same token, however, neither a warrant nor summons would have been necessary to bring Defendant before the court as he was subject to federal detention by Order of the United States District Court for the District of Vermont. *See* 2:15-cr-12, Doc. 16 (ordering on "this 20th day of January, 2015 that [Defendant] BE, and the same hereby IS, ORDERED detained") (emphasis omitted).

[2] *United States v. Bussey*, 745 F.3d 631, 632 (2d Cir. 2014), which Defendant relies on in support of his contention that a supervised release petition *and* a warrant or summons must issue before a term of supervised release ends in order to trigger tolling, is distinguishable. In *Bussey*, the defendant argued that the district court lacked jurisdiction to sentence him to an additional term of supervision because his original term ended while he was incarcerated on a New York parole

3

When engaging in statutory construction, a court must first determine whether the language in question has "a plain and unambiguous meaning with regard to the particular dispute in the case." *United States v. Am. Soc'y of Composers, Authors & Publishers*, 627 F.3d 64, 72 (2d Cir. 2010), *cert. denied*, 132 S. Ct. 366 (2011) (internal quotation marks omitted) (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002)). If the court can determine the plain meaning of the statutory text from the context of the statute, the inquiry is complete. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003) (concluding that, where "the words of the statute are unambiguous, the 'judicial inquiry is complete.'") (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)). In such cases, "the sole function of the courts is to enforce [the statute] according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485 (1917). It is a cardinal principle of statutory construction that courts give effect, if possible, to every clause and word of the statute. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) (collecting cases).

If the court concludes that a statute's meaning is ambiguous, even in the context of the statute as a whole, the court may then consult other sources, including the statute's legislative history. *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 108 (2d Cir. 2012) ("If . . . the plain meaning is ambiguous, we may consult other sources"). When interpreting ambiguous language, the focus is on the "broader context and primary purpose of the statute." *Serv. Emps. Int'l, Inc. v. Dir., Office of Workers Comp. Program*, 595 F.3d 447, 453 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)). The Second Circuit has "long held" that where a statute is ambiguous, "it should be interpreted in a way that avoids absurd results." *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 368 (2d Cir. 2006) (internal quotation marks omitted).

---

violation. The Second Circuit held that "[t]he plain language of [18 U.S.C. §§ 3583(i) and 3624(e)] defeats [defendant's] jurisdictional challenge . . . *even without regard to tolling*." *Id.* at 632-33 (emphasis added). The Second Circuit noted that the defendant's term of supervision had been tolled pursuant to § 3624(e) because the defendant had been incarcerated in connection with a prior state conviction, and accordingly "the district court had jurisdiction to enter the challenged judgment." *Id.* at 633. The *Bussey* court was thus not called upon to decide whether *pretrial* detention tolls a term of supervised release.

4

Although the Second Circuit has not yet addressed this issue, the Fourth, Fifth, Sixth, and Eleventh Circuits have held that a defendant's pretrial detention tolls a term of supervised release. *See United States v. Ide*, 624 F.3d 666, 669 (4th Cir. 2010), *cert. denied*, 131 S. Ct. 2962 (2011) (concluding "a defendant's term of supervised release is tolled while the defendant is held in pretrial detention on charges for which he is later convicted"); *United States v. Molina-Gazca*, 571 F.3d 470, 474 (5th Cir. 2009), *cert. denied*, 558 U.S. 1150 (2010) ("Pretrial detention falls within 'any period in which the person is imprisoned' and tolls the period of supervised release, provided a conviction ultimately occurs"); *United States v. Johnson*, 581 F.3d 1310, 1312-13 (11th Cir. 2009), *cert. denied*, 561 U.S. 1012 (2010) (determining district court retained jurisdiction "because [defendant] was sentenced to more than 30 days imprisonment based on his state court charges, [and] the term of supervised release did not run between the date he was released from federal custody . . . and the date he was released from state confinement"); *United States v. Goins*, 516 F.3d 416, 424 (6th Cir. 2008), *cert. denied*, 555 U.S. 847 (2008) (holding "pretrial detention lasting thirty or more days does toll the period of supervised release when the pretrial detention is later credited as time served in connection with a subsequent conviction").

In contrast, the Ninth Circuit has construed § 3624(e) to hold that pretrial detention does not constitute imprisonment "in connection with a conviction[.]" *See United States v. Morales-Alejo*, 193 F.3d 1102, 1105 (9th Cir. 1999) (ruling defendant's pretrial detention did not toll period of supervised release because the phrase "imprisoned in connection with a conviction" requires "an imprisonment resulting from or otherwise triggered by a criminal conviction"). The Ninth Circuit explained that "the intent of Congress is apparent from the language of the statute[,]" and "[p]retrial detention does not fit this definition, because a person in pretrial detention has not yet been convicted and might never be convicted." *Id.* In construing the word "imprisoned," the *Morales-Alejo* court concluded that "Congress uses the terms 'imprisonment' and 'detention' very differently in federal criminal statutes[,]" and as a result, pretrial detention does not qualify as "imprisonment[.]" *Id.* Rejecting the government's argument that pretrial

5

detention should be viewed "in retrospect" where "the detention period becomes part of the sentence if the detainee is convicted[,]" the Ninth Circuit concluded that "[t]his proposed construction is not supported by the statutory language, which gives no indication that Congress ever contemplated the type of backward-looking analysis suggested." *Id.* The Ninth Circuit further reasoned that such a policy would be "impractical" because "[a] judge attempting to determine jurisdiction based upon tolling due to pretrial detention would be unable to make the required determination in any case in which a judgment of conviction had not yet been entered[,]" such as the time between pleading guilty and sentencing. *Id.*

The Fourth, Fifth, and Sixth Circuits expressly declined to follow the Ninth Circuit's holding in *Morales-Alejo*, explaining that the plain language of § 3624(e) is broad and encompasses pretrial detention. They disagreed with the Ninth Circuit's conclusion that the phrase "in connection with a conviction" requires a prior conviction to toll a term of supervised release because the phrase "becomes entirely superfluous" if Congress intended the term imprisonment to refer only "to a confinement that is the result of a penalty or sentence[.]" *Goins*, 516 F.3d at 421; *see also Molina-Gazca*, 571 F.3d at 474 (agreeing with *Goins* court's analysis because its statutory construction employed a "plain meaning interpretation of § 3624(e) [that] gives effect to all of its terms"). These circuits have determined that "the plain meaning of 'imprison' included any instance of . . . detention[,]" including pretrial detention. *Molina-Gazca*, 571 F.3d at 474 (citing *Goins*, 516 F.3d at 422).

The plain language of § 3624(e) does not distinguish between pretrial or post-trial imprisonment provided it is in connection with a conviction. It thus permits pretrial detention to toll a defendant's term of supervised release when the defendant is detained for at least thirty days. In order to "give effect . . . to every clause and word" of the statute, *Duncan*, 533 U.S. at 174 (internal quotation marks omitted), no temporal restraint on the timing of the imprisonment is therefore required. Indeed, Congress included the phrase "during any period" in the same sentence as "imprisoned in connection with a conviction" for that very reason. *See Molina-Gazca*, 571 F.3d at 473 (examining

6

§ 3624(e), finding "no distinction between pre-trial or post-conviction periods of imprisonment," and concluding the statute only "requires that 'any period' of imprisonment be 'in connection with a conviction' for tolling to apply. The phrase 'imprisoned in connection with a conviction' plainly lacks any temporal limitation."). If the court adopted Defendant's interpretation of § 3624(e), thereby permitting only post-conviction detention to toll a term of supervised release, the word "any" would be nullified, "and the law disfavors a statutory construction that would render part of a statute a nullity." *Nat'l Weather Serv. Emps. Org. v. Brown*, 18 F.3d 986, 991 (2d Cir. 1994). Congress could have added the word "following" or "after" to the language of the statute if it intended that only post-conviction detention would qualify for tolling, but it did not do so. *See Ide*, 624 F.3d at 669-70 (declining defendant's "invitation to read the word 'following' into the statute, as it is not this Court's province to redraft legislation"). Contrary to the Ninth Circuit's conclusion, this interpretation does not require the court to determine whether it has jurisdiction by using hindsight because any supervised release violation must be based on a prior conviction so that a defendant's pretrial detention is, indeed, imprisonment "in connection with a conviction[.]" 18 U.S.C. § 3624(e).

The plain meaning of "imprison" also supports the conclusion that pretrial detention is within the scope of § 3624(e). Black's Law Dictionary defines "imprison" as "[t]o put into prison; to jail; incarcerate . . . [t]o keep (a person) somewhere so that the person is not at liberty, while preventing any departure." Black's Law Dictionary 875 (10th ed. 2014); *see also* American Heritage College Dictionary 683 (3d ed. 1993) (defining "imprison" as "[t]o put in or as if in prison; confine"). Nothing in these definitions suggests that a person must sustain a subsequent conviction in order to be imprisoned. Accordingly, pretrial detention for a supervised release violation, which is confinement relating to a conviction, falls squarely within the plain language of § 3624(e). *See Goins*, 516 F.3d at 422 ("Congress's use of the word 'imprisoned' does not exclude pretrial detention from the scope of § 3624(e)").

Pretrial detention is unquestionably time served "in connection with a conviction[.]" *See Goins*, 516 F.3d at 422 (citing 18 U.S.C. § 3585(b), which provides

7

for "credit toward the service of a term of imprisonment for any time [the defendant] has spent in official detention prior to the date the sentence commences . . . as a result of the offense for which the sentence was imposed" as "creat[ing] a connection between pretrial detention and a later conviction"). If a defendant receives credit for pretrial detention, he or she suffers no prejudice during the tolling of the expiration of a supervised release period. In such circumstances, a defendant who has sustained a new conviction, like Defendant here, may choose to have the court sentence him or her on the new conviction and the supervised release violation at the same time, as opposed to separate sentencing proceedings.[3]

Based on its plain language, § 3624(e) includes pretrial detention for a supervised release violation within the scope of imprisonment "in connection with a conviction[,]" and therefore tolls a term of supervised release. In this case, once Defendant was detained on January 20, 2015, his term of supervised release was tolled. The court therefore retained jurisdiction over Defendant's violation when it sentenced him on October 1, 2015.

### B.    Whether Defendant's Motion for Reconsideration should be Granted.

In the Second Circuit, the standard for reconsideration is "strict," and a motion for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18B Charles Alan Wright et al., Federal Practice and Procedure § 4478). Additionally, "a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257.

---

[3] Defendant affirmatively sought this result and argued that the combined sentencing proceedings warranted a variance from the Sentencing Guidelines. (Docs. 11 & 48 at 21-23.)

8

Because Defendant's term of supervised release had not expired when the court sentenced him for its violation, Defendant has failed to establish that granting his motions to reconsider could reasonably be expected to alter the conclusion reached by the court as there appears to be no meritorious grounds for an appeal.[4]  Defendant has also not established "excusable neglect or good cause . . . [to] extend the time to file a notice of appeal[.]"  Fed. R. App. P. 4(b)(4); *see also Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'hip*, 507 U.S. 380, 395 (1993) (listing factors for court to consider when deciding a motion to file a late appeal as "the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith").

The court entered judgment on October 1, 2015, and Defendant's notice of his intention to appeal was first placed in the mail on October 30, 2015,[5] beyond the fourteen day filing period for a notice of appeal.  *See* Fed. R. App. P. 4(b)(1)(A)(i) ("In a criminal case, a defendant's notice of appeal must be filed in the district court within [fourteen] days after . . . the entry of either the judgment").  In this notice of his intention, Defendant does not mention the jurisdictional issue but, instead, states that he seeks to appeal a mandatory minimum sentence, which was the product of his guilty plea.  In the motion he filed thereafter, Defendant also did not raise the jurisdictional issue.  Because it does not appear that he can prevail on his jurisdictional challenge, there remain no meritorious grounds for an untimely appeal.  The court has previously addressed Defendant's remaining arguments for extending the time period for appeal, which remain unchanged.  *See* Docs. 49 & 12.

---

[4] Defendant also cursorily argues that the court should grant his motions for reconsideration because his appeal is now limited to the court's judgment revoking his supervised release and the resulting term of imprisonment.  Defendant cites no legal authority which states that narrowing the scope of an appeal is, in and of itself, a sufficient basis for granting a motion for reconsideration.

[5] *See* Fed. R. App. P. 4(c)(1) ("If an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing").

9

Because there has been no intervening change of controlling law, new evidence, or the need to correct a clear error or prevent manifest injustice, reconsideration is not warranted.

## CONCLUSION

For the foregoing reasons, the court DENIES Defendant's motions for reconsideration (Docs. 17 & 52).

SO ORDERED.

Dated at Burlington, in the District of Vermont, this _14th_ day of March, 2016.

Christina Reiss, Chief Judge
United States District Court